Kelly Run Sanitation, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued October 16, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., MACPHAIL, DOYLE, BARRY and COLINS.

*Robert V. Campedel,* with him, *Edward P. Zemprelli, Zemprelli, Clipper and Campedel,* for petitioner.

*Bryan E. Barbin,* Deputy Attorney General, for respondent.

OPINION BY JUDGE BARRY, January 28, 1985:

This appeal results from an order of the Board of Finance and Revenue denying a request for a sales tax refund of petitioner Kelly Run Sanitation, Inc.

Petitioner operates a landfill for the disposal of various forms of waste, forty percent of which is residential waste, twenty percent of which is nonhazardous industrial waste and forty percent of which is hazardous industrial waste. The hazardous industrial waste consists of by-products generated in the manufacturing processes of a number of industrial concerns in the vicinity. Between 1979 and 1981, petitioner purchased various pieces of equipment used in the operation of the landfill. Petitioner paid sales taxes of $38,359.02 for the purchases in question. Contending that disposal of hazardous by-products is an integral part of the manufacturing process, peti-

tioner sought a refund for the sales taxes paid. Following a denial of the requested refund by both the Board of Appeals and the Board of Finance and Revenue, the Commonwealth and petitioner entered into a partial stipulation of facts. Following an evidentiary hearing on the contested factual questions, the matter is now ready for our resolution.

The Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7202(a) (Supp. 1984-85) provides:

> There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

The Code also provides, however, that the "term 'sale at retail' shall not include . . . the transfer of tangible personal property including, but not limited to, machinery and equipment and parts therefor and supplies to be used or consumed by the purchaser *directly* in any operations of—(A) the manufacture of personal property." 72 P.S. §7201(k)(8) (Supp. 1984-85) (emphasis added).

The Commonwealth initially argues that under no circumstances can petitioner be entitled to the exemption because petitioner produces no usable product at the landfill. In support of this contention, the Commonwealth points to the Code's definition of "manufacture".

> The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition

or character different from that in which it is acquired *whether for sale or use by the manufacturer,* and shall include, but not limited to—

(1) Every operation commencing with the first production stage and ending with the completion of personal property having the physical qualities (including packaging, if any, passing to the ultimate consumer) which it has when transferred by the manufacturer to another; . . . .

72 P.S. §7201(c) (Supp. 1984-85). (Emphasis added.) The Commonwealth claims that the emphasized portion requires the taxpayer to either sell or use the property whose form, composition or character has been changed to qualify for the exemption. We disagree.

The just quoted definition of "manufacturer" goes on to provide in subsection (3) that "[r]efining, blasting, exploring, mining and quarrying for, or otherwise extracting from the earth . . . any natural resources, minerals and mineral aggregates", 72 P.S. §7201(c)(3) (Supp. 1984-85), is within the definition of "manufacture". In *Commonwealth v. R. G. Johnson,* 495 Pa. 256, 433 A.2d 465 (1981) (plurality opinion), the taxpayer, while extracting no mined substance from the ground, drove bituminous coal mine slopes and sank bituminous coal mine shafts. The taxpayer sought the manufacturing exemption for equipment used in its operations. The Commonwealth argued that since the taxpayer extracted no saleable or usable product, the taxpayer was not entitled to the exemption. The court, however, stated, "we believe that it is not the identity of the party who performs the work, but the nature of the work done that should control the allowance or denial of the [exemption]." *Id.* at 260-61, 433 A.2d at 468. Such a result

is clearly inconsistent with the Commonwealth's argument in this case, thereby requiring us to reject the argument just as the Supreme Court did in *Johnson*.

The Pennsylvania Code provides:

> Equipment, machinery, and supplies designed and used to control, abate, or prevent air, water or noise pollution generated in the manufacturing or processing operation *shall be deemed to be directly used in manufacturing* or processing and, therefore, shall not be subject to tax. In order for property to qualify as exempt pollution devices it is not necessary that the pollutants be recycled or used in any manner. (Emphasis added.)

61 Pa. Code §32.32(a)(2)(ii). It seems, therefore, beyond dispute that equipment used to dispose of hazardous waste is "used to control, abate or prevent air and water pollution".[1] The petitioner disposes of the hazardous waste in accordance with the strict regulations of the Environmental Protection Agency and the Department of Environmental Resources. According to the regulation, such equipment, if used predominately to control pollution, is deemed "directly used," thereby meeting the requirements of Section 201(k)(8) of the Code and, therefore, not being a "sale at retail".

The Pennsylvania Code further provides:

> Where a single unit of such property is put to use in two different activities, one of which

---

[1] The Commonwealth argues that, since the hazardous waste disposed of after the produced personal property has been transferred by the manufacturer to another, the pollution control devices exemption is invalid because it extends the legislative definition of "manufacture" in Section 201(c)(1) of the Code. Suffice it to say that the wastes are produced during the various manufacturing processes. We believe the regulation in question is valid.

is a direct use and the other of which is not, the property shall not be exempt from tax unless the manufacturer or processor makes use of the property more than 50% of the time directly in manufacturing or processing operations. 61 Pa. Code §32.32(a)(2). The Commonwealth argues that petitioner failed to prove the equipment in question was predominately used to dispose of hazardous waste. Exhibit 3 of the partial stipulation provides:

|   | Check No. | Date | Amount | Payee | Description |
|---|---|---|---|---|---|
| 1. | 1933 | 8/15/81 | $3,900.00 | Beckwith | Scraper |
| 2. | 438 | 8/04/80 | 1,260.00 | Stephenson | Garbage Packer |
| 3. | 355 | 7/21/80 | 9,928.80 | Anderson | Trashmaster |
| 4. | 1227 | 12/07/79 | 3,162.32 | Pa. Dept. of Revenue | Crane Carrier |
| 5. | 1020 | 11/07/79 | 3,000.00 | Pa. Dept. of Revenue | Crane Carrier |
| 6. | 1359 | 1/09/80 | 1,203.90 | Stephenson | Garbage Packer |
| 7. | 546 | 8/02/79 | 11,580.00 | Highway Equipment | Crawler Tractor |
| 8. | 626 | 8/16/79 | 372.00 | Stephenson | Container |
| 9. | 3052 | 1/09/79 | 3,942.00 | Stephenson | Garbage Packer |

TOTAL    $38,359.02

The President of petitioner testified on direct examination as follows at the evidentiary hearing.

Q. Now, Mr. Fiore, the equipment that has been stipulated to as being purchased and upon which a sales tax has been paid, how is that equipment used in the processing of these wastes, whether it be non-hazardous or hazardous industrial waste?

A. The equipment is used to excavate, place the waste in the cell, and haul earth material and clay to cover and seal the cells.

Q. Are they used for any other purposes?

A. No.

(Dec. 14, 1983 Hearing, p. 26.)

However, on cross-examination, the following exchange occurred:

Q. Do you use any special equipment when you pick up this commercial waste? Is your equipment different for picking up commercial waste than it is to pick up residential?

A. Residential? Oh, yes.

Q. What's the difference?

A. The commercial wastes are in open bins, roll off type boxes. You set the bin there.

Q. That's for commercial?

A. That's for commercial.

Q. Okay. Is there a difference—

A. The refuse is actually a garbage compactor type that you see to pick up residential.

Q. What I'm trying to do—my point is when you go to the J & L, Hercules, or any of the manufacturing firms that you service do you use different equipment going to those particular customers than you do when you pick up residential?

A. Yes.

Q. You do?

A. Yes.

Q. What type of—what's the difference?

A. One is the roll off type truck that we use for all commercial or the compactor type.

Q. Do you use garbage packers?

A. No, not for the industrial no.

Q. Okay. And, you use the garbage packers exclusively for residential?

A. Yes.

Q. Is there a separation of equipment for industrial wastes for sludges then as opposed to commercial bulk waste?

A. No, we use the same type of container.

Q. What container is that?

A. The roll off containers.

Q. For sludges?

A. For sludges, bulk trash.

(December 14, 1983 Hearing, pp. 29-30.)

Petitioner's president testified that garbage packers are used solely for disposing of its residential waste, and as such, the Stephenson Garbage Packers contained on Lines 2, 6 and 9 of Exhibit 3 are not entitled to the exemption.[2] On the other hand, the remaining items are used only to dispose of industrial wastes, two-thirds of which are hazardous. Since these pieces of equipment are used as pollution control devices more than half of the time, they are exempt from the sales tax.

ORDER

Now, January 28, 1985, the order of the Board of Finance and Revenue dated April 28, 1982 at Docket No. RST-5099 denying the requested refund is reversed as petitioner is entitled to a refund of $31,-953.12. Unless exceptions are filed within thirty (30) days, the clerk is directed to enter final judgment for petitioner in the amount of $31,953.12.

---

[2] The parties have filed a partial stipulation of facts, which we accept except for No. 14 which states, "If this Court finds in favor of the Taxpayer, judgment should be entered against the Commonwealth in the amount of $38,359.02 without interest." (Partial stipulation, October 17, 1983.) As the testimony of petitioner's president shows that the garbage packers are not entitled to the exemption, we reject No. 14 in our factfinding capacity exercised in appeals from the Board of Finance and Revenue, and specifically find that the amount of the refund should be $31,953.12.